UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>FIDEL CONTRERAS,<br><br>                Defendant. | No. 1:16-cr-2037-SAB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT**<br><br>**US Marshal's Action Required** |

    Before the Court is Defendant's Motion to Dismiss Indictment, ECF No. 29. An evidentiary hearing was held on March 20, 2017. Defendant was present and represented by Jeremy B. Sporn. The United States was represented by Laurel J. Holland. Attorney Elizabeth Knowles testified at the hearing.

    Contreras argues he was wrongfully denied the opportunity to present an application for voluntary departure from the United States during his May 2, 2013 removal hearing. Consequently, he argues, the underlying order of removal is invalid and cannot serve as a viable predicate for a § 1326 reentry charge. The Court agrees.

### COLLATERAL ATTACKS IN § 1326 PROCEEDINGS

    A defendant charged under 8 U.S.C. §1326 has a due process right to collaterally attack his removal order because it serves as a predicate element of his conviction. *United States v. Raya Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT** ~ 1

(citations omitted). To be successful, the defendant must show: (1) "exhaustion of any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010); 8 U.S.C. § 1326(d).

The first two requirements can be excused. More specifically, exhaustion is not required when an Immigration Judge (IJ) fails to inform an alien that he is eligible from relief from deportation. *United States v. Ubaldo-Figeuroa*, 364 F.3d 1042, 1049 (9th Cir. 2004). Similarly, an alien is deprived of the opportunity for judicial review if the IJ failed to inform an alien regarding apparent eligibility for relief. *United States v. Valdez-Novoa*, 780 F.3d 906, 914 (9th Cir 2015). An alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). A waiver is not considered and intelligent however, if the record contains an inference that the person is eligible for relief from deportation, but the Immigration Judge fails to advise the alien of this possibility and give him opportunity to develop the issue. *Id*.

"An underlying removal order is fundamentally unfair if an alien's due process rights were violated by defects in the underlying deportation proceeding, and if he suffered prejudice as a result of the defects." *Ramos*, 623 F.3d at 680. To show prejudice, a defendant need not show conclusively that he actually would have been granted relief; rather, he need only show that it is plausaible he would have received such relief. *Valdez-Novoa*, 780 F.3d at 917.

Reviewing courts follow a two-step process to determine whether a defendant was prejudiced by the IJ's failure to inform him of his apparent eligibility for voluntary departure relief: (1) the court identifies the factors relevant to the IJ's exercise of discretion for the relief being sought; and (2) the court makes

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT** ~ 2

a determination whether "in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the alien's own case, it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Id*.

The factors relevant to an IJ deciding whether to grant voluntary departure are the alien's negative and positive equities. *Id.* The negative equities include: the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident. *Id.* The positive equities are compensating elements, such as long residence in the US, close family ties in the US, and humanitarian needs. *Id.*

## FACTS

Fidel Contreras was born in Mexico in 1981. At the age of just one or two, he was brought to the United States by his parents. He has three brothers and one sister, all of them younger and all of them natural-born United States citizens. His parents are also naturalized citizens. His family runs a successful trucking business located in the Tri-Cities area in Washington.

Contreras was granted status as a lawful permanent resident of the United States in 1989. He has been in a long-term relationship with the mother of his 3 year old son, both of whom are U.S. citizens. His son was born in the United States. He has numerous aunts, uncles and cousins in the United States as well as his grandparents.

In 2008, Contreras was placed in removal proceedings as a result of accumulating several criminal convictions, including forgery and 2nd degree theft. He retained an attorney and was granted cancellation of removal under 8 U.S.C. § 1229b(a), which allowed him to remain in the United States.

In January 2013, Contreras was again placed in removal proceedings

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT** ~ 3

because of additional criminal convictions, including Attempting to Elude and Theft-Shoplifting. He retained an attorney, Elizabeth Knowles, to represent him.

Ms. Knowles was very inexperienced at the time she represented Contreras. She graduated from law school in 2012 and passed the bar later that year. She joined the law firm hired by Contreras at the end of December, 2012, as an associate. Ms. Knowles was the primary attorney working on the case, but her work was generally supervised by a more experienced partner at the firm.

In her declaration and testimony at the hearing, she explained Contreras made it clear he was not interested in voluntary departure because he wanted to remain in the United States. Attorney Knowles provided no written advice regarding the pitfalls or benefits of voluntary departure. Instead, the written documentation included written advice regarding asylum, outstanding warrants, appeal rights, and post-conviction relief. Ms. Knowles was unable to remember how many times she discussed voluntary departure with Contreras, or that she ever discussed it with him during or just before the final removal hearing on May 2, 2013. In his declaration, Contreras indicated that he does not recall ever discussing voluntary departure with attorney Knowles.

An initial hearing with the Immigration Judge was held on February 13, 2013.[1] Contreras and Ms. Knowles appeared and were given more time to prepare. On February 27, 2013, the government added an additional charge, namely a 2010 conviction for 2nd degree identity theft.

The final removal hearing was held on May 2, 2013. Attorney Knowles conceded the issue of removability and the IJ concluded Contreras was removable. Because he was previously granted cancellation of removal, he was ineligible to apply again. The IJ asked, "Any other forms of relief he's requesting?" At that point, the following colloquy took place:

Attorney. Knowles: Your Honor, we would like to seek post-

---

[1] A bond hearing was held on February 7, 2013.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT** ~ 4

conviction relief.

IJ: Ok, well that is a collateral matter. At this time I find that he is removable as charged and the convictions are final for immigration purposes. So what I can do is issue a decision and if he wishes to pursue that, then he certainly can. Without any other forms of relief from removal that he's requesting, I would have to order his removal. Okay. Anything else on that issue?

Attorney. Knowles:  No, your honor.

The IJ denied the request for a continuance, finding good cause did not exist for a collateral attack on the conviction. At no time did Ms. Knowles or the IJ discuss the possibility of voluntary departure. The IJ then issued an Order of Deportation, and for some reason the order incorrectly indicates Contreras's application for voluntary departure was denied. Contreras was ordered removed to Mexico

Contreras was deported to Mexico in June, 2013. He returned to the United States and was arrested in January, 2016. In May, 2016, an Indictment was filed charging him with illegal reentry after deportation.

## ANALYSIS

Here, the record is clear. Contreras's's due process rights were violated at the May, 2013 deportation hearings when, after he was declared removable, neither his lawyer nor the IJ judge discussed with him the opportunity to apply for voluntary departure. As a result, he was never given an opportunity to apply for voluntary departure, and thus, he is excused from the exhaustion requirement and he was not given a meaningful opportunity to appeal. Consequently, the underlying deportation proceeding was unfair.

Regardless of whether Contreras had previously expressed a desire to remain in the United States, there is nothing in the record to suggest that the IJ was made aware of this. By May, 2013, the ground had shifted to the point where voluntary departure was the only form of relief likely to spare Contreras from the

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT** ~ 5

consequences of a formal removal, which triggered obligations to discuss this avenue of relief with him. Both the IJ and the lawyer representing Contreras had this obligation, and both failed to address this issue with him at this very critical stage of the removal proceeding.

This Court is also concerned that the IJ's Order was completed incorrectly, with no explanation. The Order indicated that the application for voluntary departure was denied, but in fact no such application was made and the right to request such relief was not even discussed with Contreras at this stage of the proceeding. Attorney Knowles testified she did not seek to explore or correct the IJ's notation, did not discuss the issue with Contreras, and did not seek appeal on that issue. The incorrect Order of Deportation confused this Court and it would have certainly confused Contreras as well. At a minimum, due process demands that the deportation order accurately reflect the actual proceedings.

Contreras correctly argues that he could have sought voluntary departure and pursued his post-conviction relief at the same time. Post-conviction relief is a collateral matter not pending before the IJ, and seeking it did not require Contreras's presence in the United States.

Moreover, Contreras has demonstrated that he was prejudiced by the defects in the proceedings. The record supports the conclusion that had the IJ considered all of the negative and positive equities of the unique circumstances of Contreras's case, it is plausible the IJ would have granted him voluntary removal. The positive equities apparent from the record are his long residence in the United States, his lack of prior deportations/removals, his strong family ties, his consistent employment history, and the birth of his son. The negative equities include his criminal history, but, as Contreras pointed out in his supplemental briefing, there is ample precedent suggesting it is plausible the IJ would have permitted him to voluntary depart from the United States.

///

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT** ~ 6

The Court rejects the United States's argument that Contreras was ineligible for voluntary departure because he did not make such a request at the immigration hearing and the IJ would have been prevented from granting it within 30 days thereafter. Notably, the United States has not provided any case law to support its position. The CFR relied on by the United States is seemingly at odds with 8 U.S.C. § 1229c(a). On the contrary, case law suggests that requests for voluntary departure can be made at any time prior to waiving the right to appeal. *See e.g. Zumudio-Pena v. Holder*, 2009 WL 1396824 (9th Cir. 2009) (unpublished) (holding the IJ's failure to provide the petitioner complete and accurate information regarding his apparent eligibility for pre-hearing voluntary departure and the differences between the two forms of voluntary departure potentially affected the outcome of the proceeding by concluding it was reasonably likely the petitioner would have requested pre-hearing voluntary departure and waived his right to appeal had he been properly advised during his removal proceeding.)

## CONCLUSION

The Court finds Contreras's due process rights were violated during the underlying removal proceeding and the entry of the removal order was fundamentally unfair. Consequently, the order of removal is not valid and cannot serve as a predicate for the pending criminal charges based on 8 U.S.C. § 1326

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss Indictment, ECF No. 29, is **GRANTED**.
2. The Indictment, filed on May 10, 2016, is **dismissed,** with prejudice.
3. All future court dates are STRICKEN.
4. Defendant shall be **immediately released from U.S. Marshal custody**.

///
///
///
///

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT** ~ 7

1      **IT IS SO ORDERED.** The District Court Executive is hereby directed to
2  file this Order and provide copies to counsel and the US Marshal's Service.
3      **DATED** this 3rd day of April, 2017.



                        *Stanley A. Bastian* (signature)

                        Stanley A. Bastian
                      United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT** ~ 8